UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SENECA FREE TRADE ASSOCIATION<br><br>*Plaintiff,*<br><br>v.<br><br>ERIC H. HOLDER, JR., *in his official capacity as Attorney General of the United States*<br>950 Pennsylvania Avenue N.W.<br>Washington D.C. 20530<br><br>UNITED STATES DEPARTMENT<br>OF JUSTICE<br>950 Pennsylvania Avenue N.W.<br>Washington D.C. 20530<br><br>JOHN E. POTTER, *in his official capacity as Postmaster General and Chief Executive Officer of the United States Postal Service*<br>475 L'Enfant Plaza S.W.<br>Washington D.C. 20260<br><br>and<br><br>UNITED STATES POSTAL SERVICE<br>475 L'Enfant Plaza S.W.<br>Washington D.C. 20260<br>*Defendants.* | Civil Action No. _____ |

## COMPLAINT

Plaintiff Seneca Free Trade Association ("SFTA" or "Plaintiff"), by and through undersigned counsel, brings this complaint to enjoin the enforcement of the unconstitutional Prevent All Cigarette Trafficking Act of 2009 ("PACT Act"). Specifically, Plaintiff seeks to enjoin the Defendants from (i) enforcing the unlawful prohibition on using the United States Postal Service to deliver cigarettes and smokeless tobacco to adult customers, (ii) enforcing the

unlawful Delivery Sales provisions of the PACT Act; and (iii) from pursuing criminal sanctions for violations of the PACT Act against the businesses SFTA represents.

## INTRODUCTION

1. On March 31, 2010, President Obama signed the Prevent All Cigarette Trafficking Act of 2009 ("PACT Act" or "Act") into law. Pub.L. 111-154, 124 Stat. 1088. The Act went into effect on June 29, 2010.

2. The PACT Act was enacted to reduce or eliminate remote sales of tobacco products. The effect of the Act is most directly felt by the Enrolled Members of the Seneca Nation of Indians ("Seneca Nation").

3. The SFTA, a non-profit organization chartered by the government of the Seneca Nation, is comprised of hundreds of businesses licensed by the Seneca Nation, many of which are tobacco businesses.

4. The Seneca Nation's cigarette and tobacco economy is the predominate source of private sector economic activity and employment within Seneca Territory.

5. The PACT Act is causing these SFTA represented tobacco businesses to be unable to ship their products to their customers. The Act's provisions prevent the businesses from mailing their products through the United States Postal Service ("USPS"), which was their primary delivery method. Due to a 2005 agreement between commercial shippers (United Parcel Service, DHL and Federal Express) and the State of New York to stop shipping tobacco products and the penalties the PACT Act imposes on shippers, the SFTA member businesses have found it nearly impossible to find alternative shipping arrangements aside from the USPS.

6. There are over 140 tobacco businesses on Seneca Territory that are being affected by the PACT Act. SFTA member businesses are in the process of shutting down because of the PACT

Act. Thousands of jobs will be lost on Seneca Territory and the cigarette and tobacco economy will be devastated. In addition, the collapse of this economy will devastate Seneca Nation social welfare programs, such as health and education, which are supported by this economy. In short, the PACT Act will have a widespread negative impact on all Enrolled Members of the Seneca Nation.

7. The PACT Act violates the Due Process Clause because it unlawfully forces – under threat of criminal sanction – the businesses the SFTA represents to pay taxes to states for which they do not have the requisite minimum contacts in order to ship cigarettes and smokeless tobacco to adult consumers. The PACT Act also violates the Equal Protection component of the Fifth Amendment because it unlawfully discriminates against similarly situated individuals and entities. Additionally, the PACT Act violates the Tenth Amendment because it unlawfully commandeers states to collect excise taxes from a remote seller before a tobacco product can be shipped to an adult consumer. The PACT Act also violates the Due Process Clause of the Fifth Amendment because the criminal provisions of the Act are impermissibly vague. For all of these reasons, the Act should not be enforced.

## JURISDICTION AND VENUE

8. This is an action arising under the United States Constitution and 28 U.S.C. §§ 2201-2202 seeking declaratory and injunctive relief to cure deprivations of the federal rights of the members of the SFTA, which will be violated by Defendants' enforcement and compliance with the PACT Act.

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346, and 39 U.S.C. § 409.

10. Venue lies in the Western District of New York under 28 U.S.C. § 1391(e).

## PARTIES

### Plaintiff

11. The SFTA is a non-profit organization chartered by the government of the Seneca Nation. The Seneca Nation is a federally-recognized Indian Tribe. The SFTA's membership is comprised of hundreds of businesses licensed by the Seneca Nation. The SFTA is authorized by its Charter to engage in advocacy efforts to protect and defend the inherent and sovereign right of its members to exercise their rights of self-determination and to freely pursue and engage in commerce and economic activity within and from the Seneca Nation's Territories. The SFTA can sue on its own and, as here, on its members' behalf.

12. There are at least 140 licensed businesses that are members of the SFTA that rely exclusively or predominantly on the USPS to deliver cigarettes and smokeless tobacco products to their adult customers. Many of these businesses have already shut down, or are in the process of shutting down, because of the PACT Act.

### Defendants

13. Defendant Eric H. Holder, Jr. is sued in his official capacity as the Attorney General of the United States of America. In his official capacity, the Attorney General is the chief federal official responsible for enforcement of all federal statutes, including the PACT Act, in accordance with the Constitution of the United States.

14. Defendant Department of Justice is the agency responsible for enforcements of all federal statutes, including the PACT Act, in accordance with the Constitution of the United States.

15. Defendant John "Jack" E. Potter is the Postmaster General of the United States. In his official capacity, he is responsible for the delivery of regular mail in the United States.

16. Defendant United States Postal Service is an independent establishment of the Executive Branch of the United States government, empowered by Congress to sue and be sued in its own name. It is responsible for the delivery of regular mail in the United States.

## FACTUAL BACKGROUND

### The PACT Act Generally

17. The PACT Act has several stated purposes. First, it seeks to "require Internet and other remote sellers of cigarettes and smokeless tobacco to comply with the same laws that apply to law-abiding tobacco retailers." PACT Act. § 1(c)(1). Second, it hopes to "create strong disincentives to illegal smuggling of tobacco products." *Id.* § 1(c)(2). Third, the Act "provide[s] government enforcement officials with more effective enforcement tools to combat tobacco smuggling." *Id.* § 1(c)(3). Fourth, it hopes to "make it more difficult for cigarette and smokeless tobacco traffickers to engage in and profit from their illegal activities." *Id.* § 1(c)(4). Fifth, it seeks to "increase collections of Federal, State, and local excise taxes on cigarettes and smokeless tobacco." *Id.* § 1(c)(5). Finally, it hopes to "prevent and reduce youth access to inexpensive cigarettes and smokeless tobacco through illegal Internet or contraband sales." *Id.* § 1(c)(5).

18. To achieve these stated purposes, the PACT Act includes three key sections that are at issue in this lawsuit: (1) restrictions on delivery sales (which are sales that are not in person); (2); enhanced investigative tools and criminal penalties; and (3) provisions making tobacco products nonmailable to consumers through the USPS.

### Delivery Sale Requirements

19. The first key section relates to the delivery sale of tobacco products. It has several subparts which impose significant burdens on delivery sellers such as SFTA member businesses.

20. The first subpart adds some additional shipping requirements, including a ten pound weight restriction, certain labeling requirements and a mandate that sellers verify the age of the recipient. *Id.* § 2A(b)(1)-(4).

21. The second subpart increases the recordkeeping requirements on delivery sellers by requiring them to make and retain for four years records of every delivery sale, organized by State. *Id.* § 2A(c)(1).

22. The delivery sales section of the PACT Act also adds a substantial new taxation requirement. It provides that delivery sellers cannot:

> sell or deliver to any consumer, or tender to any common carrier or other delivery service, any cigarettes or smokeless tobacco pursuant to a delivery sale unless, *in advance of the sale, delivery, or tender*--(A) any cigarette or smokeless tobacco excise tax that is imposed by the State in which the cigarettes or smokeless tobacco are to be delivered has been paid to the State; (B) any cigarette or smokeless tobacco excise tax that is imposed by the local government of the place in which the cigarettes or smokeless tobacco are to be delivered has been paid to the local government; and (C) any required stamps or other indicia that the excise tax has been paid are properly affixed or applied to the cigarettes or smokeless tobacco.

*Id.* § 2A(d)(emphasis added).

23. This subsection adds a substantial burden on delivery sales by tobacco businesses because they must determine the taxation and stamping requirements of all 50 states and local municipalities and comply with them before shipping any covered products to those states via common carrier or other delivery service.

24. This subsection also changes existing State law, some of which have procedures to collect taxes that differ from the federal scheme mandated by the PACT Act. This scheme requires delivery sellers not only to provide notice of sales, but also to pay "in advance" of any

sale or delivery any excise taxes owed to the State regardless of the actual tax scheme employed by an individual state or locality.

25. The PACT Act also requires the delivery seller to obtain the required State stamps "in advance" of the sale, even if this is not the procedure in the state or local jurisdiction. Thus, rather than leaving it to States and localities to collect State and local excise taxes owed from buyers and sellers under applicable state and local law, the PACT Act requires delivery sellers to figure out how much taxes will be owed and pay those taxes themselves.

26. Another subpart of this section requires the Attorney General to "compile a list of delivery sellers of cigarettes or smokeless tobacco that have not registered with the Attorney General of the United States" and then prohibits any common carrier from delivering any shipments of cigarettes from these nonregistered persons. *Id.* § 2A(e). Notably, these restrictions, as well as other regulations on common carriers, do not apply to:

> the Assurance of Discontinuance entered into by the Attorney General of New York and DHL Holdings USA, Inc. and DHL Express (USA), Inc. on or about July 1, 2005, the Assurance of Discontinuance entered into by the Attorney General of New York and United Parcel Service, Inc. on or about October 21, 2005, and the Assurance of Compliance entered into by the Attorney General of New York and Federal Express Corporation and FedEx Ground Package Systems, Inc. on or about February 3, 2006, if each of those agreements is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers.

There is also an exception for any common carrier who entered into a similar agreement. *Id.* § 2A(e)(3)(B).

**Penalties Under The Act**

27. The Act requires a delivery seller to comply with the requirements of the Act and "all State, local, tribal and other laws generally applicable to sales of cigarettes or smokeless tobacco, as if the delivery sales occurred entirely within the specific State and place." *Id.* § 2A(a).

28. The Act provides for a prison term of three years for knowing (not willful) violations. *Id.* § 3(a). It also includes civil monetary penalties against delivery sellers of $5,000 for the first violation and $10,000 for every violation after that or 2% of gross sales by the delivery seller for the previous year. *Id.* § 3(b)(1)(A).

29. The Act provides for civil penalties against common carriers of $2,500 for the first violation and $5,000 for each violation after that within a one year period. *Id.* § 3(b)(1)(B). The Act, however, includes several exceptions to the common carrier penalties that make it easier for common carriers to avoid these civil penalties. *Id.* § 3(b)(3).

30. The Attorney General has enforcement authority under the PACT Act though the Act also allows state, local and tribal governments to bring actions in federal district courts to enjoin any activity that violates the Act. *Id.* § 3(b)-(c).

**Making Tobacco Products Nonmailable To Consumers Through the USPS**

31. The third key provision of the PACT Act at issue here is the Act's prohibition against delivery sales of cigarettes and tobacco products through the USPS. This section does not amend the Jenkins Act but is an amendment to the statutes concerning the USPS in Chapter 83 of Title 18.

32. The Act states that cigarettes and tobacco products "are nonmailable and shall not be deposited in or carried through the mails. The United States Postal Service shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe contains any cigarettes or smokeless tobacco." 18 U.S.C. § 1716E(a)(1).

33. This section contains an exception for cigarettes and tobacco mailed within the States of Alaska and Hawaii. *Id.* § 1716E(b)(2).

34. The PACT Act also requires the USPS to issue regulations implementing the Act. The USPS has issued regulations implementing the requirements of the PACT Act. *See* 39 C.F.R. §§ 20, 111.

35. Section 3 of the PACT Act also includes separate penalties for noncompliance. It provides for a civil penalty (in addition to any penalties already in Title 18, Chapter 83) of "10 times the retail value of the nonmailable cigarettes or smokeless tobacco." PACT Act § 3(d). There also is a criminal penalty of a prison sentence up to one year. *Id* § 3(e).

**The Seneca Nation**

36. The Seneca People are part of the Six Nations of the Haudenosaunee Confederacy. At one time, the Haudenosaunee lived in and exercised control over more than thirty-five million acres of land located in what is now the Northeastern United States stretching from the Atlantic Ocean, west to the Mississippi River and south into what is now the Carolinas. The Seneca People have lived in what is now the western part of New York State for more than one thousand years.

37. The private sector economy of the Seneca People has been built upon the many centuries old tobacco trade taking place on and from Seneca Territory. The Seneca People and other North and South American Indian societies domesticated wild tobacco plants long before the arrival of the European colonists. Tobacco was monetized within Indian society and freely traded among Indian communities hundreds of years before these shores were invaded by foreign colonists. Tobacco has played a far more significant role within Indian societies than in any other.

38. Today, there are approximately 8,000 Enrolled Members of the Seneca Nation. The Seneca Nation's tobacco economy has vastly improved the socioeconomic conditions of the

Seneca People but despite this improvement, economic conditions within the Seneca Nation are substantially below conditions of its state neighbors, New York, Ohio, and Pennsylvania.

39. The Seneca Nation's private sector tobacco economy is anchored by licensed Seneca businesses who are members of the SFTA and deliver tobacco products via the USPS to adult consumers. These businesses receive telephone, fax mail and/or internet orders and mail their products to customers throughout the United States. The USPS dominates this industry for two reasons.

40. First, because Seneca Territory is located in poor and remote areas of New York, these businesses rely exclusively or predominantly on the USPS to reach their customers.

41. Second, as Congress expressly recognized in the Act, the State of New York in 2005 and early 2006 entered into agreements with commercial carriers, including Federal Express, UPS, and DHL, to discontinue the delivery of cigarettes and smokeless tobacco products.

42. Without the USPS delivery system, then, the internet and mail order-based tobacco businesses of many, if not all, SFTA member businesses cannot ship their products. Approximately 80% of the tobacco products sold at retail by Seneca businesses are sold by Seneca businesses using the USPS.

**The PACT Act Will Devastate The Seneca Licensed Tobacco Businesses**

43. The SFTA's membership is comprised of hundreds of businesses licensed by the Seneca Nation. It is dedicated to promoting, developing, cultivating, and protecting the private sector economic interests of the Seneca Nation's community.

44. The SFTA is required by its Charter and By-Laws to facilitate the self-regulation of those individuals and business that engage in the retail sale of cigarettes and other tobacco products from Seneca Territory.

45. The SFTA is authorized by its Charter to engage in advocacy efforts to protect and defend the inherent and sovereign right of its members to exercise their rights of self-determination and to freely pursue and engage in commerce and economic activity within and from Seneca Territory.

46. The Seneca Nation's cigarette and tobacco economy is the predominant source of private sector economic activity and employment within Seneca Territory.

47. Through the payment of fees by Seneca owners of tobacco businesses to the Seneca Nation, the socioeconomic status of those on Seneca Territory has vastly improved. These fees are used for various purposes, including health, education and welfare programs.

48. Approximately 140 Seneca-owned businesses rely primarily, or entirely, on delivery sales of cigarettes and tobacco. At least 61 of these businesses have only an internet, telephone, and/or fax order business; they have no brick-and-mortar store. The remaining 80+ businesses have both an internet/telephone/fax component and a small brick-and-mortar component in which they make in-person sales.

49. The size of the Seneca-owned businesses that ship tobacco products via the USPS ranges from companies employing more than 110 employees to small family-operated businesses employing just two people. These businesses employ both Seneca and non-Seneca employees.

50. The PACT Act with its regulations and restrictions on delivery sales and the prohibition on mailing tobacco products via the USPS will devastate SFTA member businesses and the cigarette and tobacco economy on Seneca Territory.

51. The PACT Act will cause, thousands of individuals, including Seneca Nation members and non-Indians to lose their jobs.

52. The PACT Act also will adversely affect the Seneca-licensed wholesalers, distributors and stamping agents that rely on these Seneca licensed mail-order businesses. The PACT Act's effects will also be indirect. There will be a massive loss of revenue to the entire Seneca Nation and surrounding communities that will affect other businesses such as restaurants and stores, plus service providers such as attorneys, accountants and consultants.

## CAUSES OF ACTION

### Count One

### Violation of the Due Process Clause

53. The allegations of paragraphs 1-52 are incorporated by reference.

54. The PACT Act violates the protections afforded SFTA member business by the Due Process Clause because it permits States – and even counties and localities within those States – to have jurisdiction over SFTA member businesses regardless of whether or not the state has the requisite minimum contacts with the business.

55. The PACT Act also violates the Due Process Clause because it imposes criminal and civil penalties on SFTA members for any shipment of cigarettes where the remote State's excise taxes and other requirements have not been met, even where the constitution will not permit the collection of those taxes.

56. As a direct and proximate cause of the PACT Act's violation of SFTA member businesses' Due Process rights, these businesses have suffered irreparable harm.

### Count Two

### Violation Of Equal Protection Rights Guaranteed By The Due Process Clause Of The Fifth Amendment

57. The allegations of paragraphs 1-56 are incorporated by reference.

58. The PACT Act violates equal protection guarantees by permitting mailings of cigarettes and smokeless tobacco through the USPS within the States of Alaska and Hawaii, while prohibiting those same mailings in every other State.

59. In effect, the PACT Act prohibits SFTA member businesses from mailing cigarettes and tobacco within New York via the USPS, while similarly situated businesses in the States of Alaska or Hawaii are not restricted from such intra-state mailings. In such a situation, the cigarettes and smokeless tobacco of an SFTA represented business would be seized and forfeited and the business would be subject to criminal and civil penalties, while a similarly situated business within the State of Alaska and Hawaii would face no penalty.

60. This classification is irrational and is a violation of the SFTA member businesses' equal protection rights.

61. SFTA member business' right to equal protection of the laws, guaranteed by the Due Process Clause of the Fifth Amendment, are violated by Defendants' enforcement and compliance with § 1716E of the PACT Act.

62. As a direct and proximate cause of Defendants' violation of the Fifth Amendment, the SFTA member businesses have suffered irreparable harm.

### Count Three
### Violation of the Tenth Amendment

63. The allegations of paragraphs 1-62 are incorporated by reference.

64. The Tenth Amendment prevents the federal government from compelling States to regulate or "commandeer" state officials to carry out federal regulatory programs.

65. The PACT Act violates the Tenth Amendment because it impermissibly requires States and local governments to amend and/or create a new process by which they collect cigarette taxes in advance of a sale.

66. As a direct and proximate cause of the PACT Act's violation of the Tenth Amendment, SFTA member businesses have suffered irreparable harm.

## Count Four

### Violation of the Due Process Clause of the Fifth Amendment

67. The allegations of paragraphs 1-66 are incorporated by reference.

68. The criminal penalties in the PACT Act violate the Due Process Clause of the Fifth Amendment because the statute is impermissibly vague.

69. The Act provides no fair warning about what conduct it proscribes and is written in a manner that will encourage arbitrary and discriminatory enforcement.

70. As a direct and proximate cause of the vagueness of the PACT Act, SFTA member businesses have suffered irreparable harm.

### REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

71. Preliminarily and permanently enjoin Defendants, including officers, agents, employees, and all other persons acting in concert or participation with them from enforcing and/or complying with the PACT Act.

72. Declare that Congress lacked the power and authority to enact the PACT Act under the United States Constitution as set forth in this Complaint and that the PACT Act, and any rules or regulations promulgated thereunder, is unconstitutional on its face and/or as applied to Plaintiff.

73. Declare that the United States Postal Service must pick up and deliver packages of cigarettes and smokeless tobacco products from SFTA member businesses.

74. Award Plaintiff reasonable attorneys fees, costs, and expenses under 28 U.S.C. § 2412 and other applicable law.

75. Grant Plaintiff such further relief as the Court deems just, proper, and equitable.

Dated: July 1, 2010                    Respectfully submitted,

                                       GOLDBERG SEGALLA LLP


                                       By:  /s/ Daniel B. Moar
                                       Daniel B. Moar (N.Y. Bar # 4561866)
                                       665 Main Street
                                       Suite 400
                                       Buffalo, NY 14203
                                       Telephone: (716) 844-3416
                                       Fax: (716) 566-5401
                                       Email: dmoar@goldbergsegalla.com

                                       MORGAN, LEWIS & BOCKIUS LLP
                                       Fred F. Fielding (*pro hac vice* application forthcoming)
                                       R. Edward Cruz (*pro hac vice* application forthcoming)
                                       Howard M. Radzely (*pro hac vice* application forthcoming)
                                       Russell R. Bruch (*pro hac vice* application forthcoming)
                                       1111 Pennsylvania Avenue, N.W.
                                       Washington, D.C. 20004
                                       Telephone: (202) 739-3000
                                       Fax: (202) 739-3001
                                       Email: ffielding@morganlewis.com
                                              tcruz@morganlewis.com
                                              hradzely@morganlewis.com
                                              rbruch@morganlewis.com


                                       *Counsel for Seneca Free Trade Association*